IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

VINCENT K. GRAHAM,  \*

    Petitioner,  \*

v.  \*  Civil Action No. GJH-16-1647

WARDEN,  \*

    Respondent.  \*

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Respondent Warden FCI Cumberland moves to dismiss or for summary judgment, ECF No. 4, in response to the above-entitled Petition for Writ of Habeas Corpus, ECF No. 1, filed pursuant to 28 U.S.C. § 2241. Petitioner Vincent Graham opposes the motion. ECF No. 8. For the reasons stated herein, Respondent's motion, construed as a Motion for Summary Judgment,[1] shall be granted and the petition shall be dismissed.

### I. BACKGROUND

#### A. The Incident and Resulting Petition

Petitioner Vincent Graham is a Federal Bureau of Prisons ("BOP") inmate confined to the Federal Correctional Institution in Cumberland, Maryland ("FCI Cumberland"). Graham states that on February 8, 2015, while incarcerated at the Metropolitan Detention Center ("MDC") in Brooklyn, New York, "he had a minor disagreement with another inmate, Larry

---

[1] Respondent's dispositive submission will be treated as a Motion for Summary Judgment under Federal Rule of Civil Procedure 56 because materials outside the original pleadings have been considered. *See Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

Skinner, about a Super Bowl game." ECF No. 1 at 8.[2] Graham states that other inmates intervened in the disagreement, and that Cadre Officer Hernandez placed both Graham and Skinner in the Special Housing Unit ("SHU") as a result of the disagreement. *Id.*

Graham alleges that on February 9, 2015, a "SIA officer" wrote an incident report stating that surveillance tapes were reviewed in the "cadre unit," and prison officials determined that Graham and Skinner were "attempting to fight." *Id.* The incident report described Graham and Skinner being in a "fighting stance moving towards each other." *Id.* Graham denies that he or Skinner were ever in a fighting stance and asserts that had that been true, Officer Hernandez would have included that information in his memorandum written on the day of the incident. *Id.*

Graham states that the resulting decision finding him guilty of attempting to fight was improper because: the charge (201A) does not reference a proper violation because "all violations consist of only numbers without letters following the number"; the evidence did not support the hearing officer's decision; Graham was denied the opportunity to view the video; there was a miscalculation of his security custody level score; the SIA officer misstated the facts in the incident report; and the hearing officer tricked him into waiving a continuation when it became known his staff representative was unavailable. ECF No. 1 at 8–9. As relief, Graham seeks to have the incident report removed from his prison record and the restoration of the 27 days of good conduct that were revoked. *Id.* at 9.

### B. The BOP Discipline Process

Respondent explains that when BOP staff have a reasonable belief that a violation of a Bureau regulation has been committed by an inmate, they prepare an incident report. ECF No. 4-1 at 2; *see also* 28 C.F.R. § 541.5(a). The inmate is provided with a written copy of the charges

---

[2] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

against him, which is usually done within twenty-four hours of the time staff became aware of the inmate's involvement in an incident warranting a report. 28 C.F.R. § 541.5(a). When the written report is provided, an investigating officer reads the charges to the inmate and asks for the inmate's statement concerning the incident. § 541.5(b). An investigation is conducted, and all steps and actions taken are recorded on the incident report. *See id.* All relevant materials are then forwarded to the Unit Disciplinary Committee ("UDC") for an initial hearing. *See* 28 C.F.R. § 541.5(b).

The UDC holds an initial hearing, ordinarily within five working days from the time the incident report was issued, excluding the day the incident report was issued, weekends, and holidays. *See* 28 C.F.R. § 541.7(c). The inmate is entitled to be present at the initial hearing, except during deliberations of the decision makers, or when institutional security would be jeopardized by the inmate's presence. *See* 28 C.F.R. § 541.7(d). The inmate is entitled to make a statement and to present documentary evidence on his own behalf at the initial hearing. *See* 28 C.F.R. § 541.7(e). The UDC makes a decision "based on at least some facts and, if there is conflicting evidence, on the greater weight of the evidence," *id.*, or may refer the report to a Disciplinary Hearing Officer (DHO) for further proceedings. § 541.7(g).

At the DHO hearing, the inmate may appoint a staff representative. 28 C.F.R. § 541.8(d). The inmate is also entitled to provide the names of witnesses the inmate wishes to be called to testify at the hearing and what testimony they are expected to provide. § 541.8(f). The DHO considers all evidence presented at the hearing and bases his decision on at least some facts, and if there is conflicting evidence, on the greater weight of the evidence. *Id.* The DHO prepares a written report explaining his decision and provides a copy to the inmate. § 541.8(h).

Pursuant to these regulations, Graham was provided a UDC hearing on February 12, 2015, where he denied the allegations and claimed he was not in a fighting stance or moving toward Skinner, but admitted they had a disagreement. ECF No. 4-4 at 2. The UDC referred the charge to the DHO based on the severity of the incident. ECF No. 4-2 ¶ 2. Graham was provided with a copy of his rights for the DHO hearing and elected to have a staff representative at the hearing, but did not request witnesses. ECF No. 4-5 at 1–2.

DHO Daniel Garcia, who presided over the February 19, 2015 hearing, noted that the evidence relied upon to arrive at a guilty finding included Graham's own statement, the video that depicted Graham and Skinner in the common area of unit B32, and the officer's report. ECF No. 4-6 at 2. The hearing officer noted that:

> I also reviewed the video and also observed you and Skinner arguing with each other in the common area of unit B32. He would walk away and your (sic) were behind him both continuing to argue. There was an inmate that was between you both. He walked toward his bunk to put his sneakers on and you walked to your bunk area. He was being held back by an inmate as you were walking toward him. He got past the inmate. You threw something that you had in your hands to the side and you both approached each other preparing to fight. Again another inmate got in between you both. This time an inmate pushed you away from the situation and another inmate was pushing him away from the situation.
>
> It was noted you had every opportunity to leave this area but you stayed. You could have left out of the unit and toward the unit team. You had every opportunity to leave this area but you did not.

*Id.* The sanctions imposed were 30 days of disciplinary segregation, 180 days loss of commissary, 90 days of impound property, and 27 days loss of good conduct. *Id.* The rationale provided for the sanction is noted as follows:

> Fighting A . . . cannot be tolerated because it is a clear violation of a prohibited act. This type of behavior disrupts the orderly running of this institution and staff's ability to perform their assigned duties. This type of action is unacceptable and if allowed to continue uncorrected, tends to encourage other inmates to participate in the same type of behavior. . . . These sanctions are imposed to deter

you from future negative behavior and to again remind you that you are expected
to follow the rules and regulations of the institution and any BOP facility.

*Id.*

## II. STANDARD OF REVIEW

Summary Judgment is governed by Fed. R. Civ. P. 56(a), which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion explaining, "[b]y its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247–48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in [his] favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

you from future negative behavior and to again remind you that you are expected
to follow the rules and regulations of the institution and any BOP facility.

*Id.*

## II. STANDARD OF REVIEW

Summary Judgment is governed by Fed. R. Civ. P. 56(a), which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion explaining, "[b]y its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247–48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in [his] favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

you from future negative behavior and to again remind you that you are expected
to follow the rules and regulations of the institution and any BOP facility.

*Id.*

## II. STANDARD OF REVIEW

Summary Judgment is governed by Fed. R. Civ. P. 56(a), which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion explaining, "[b]y its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247–48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in [his] favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## III. ANALYSIS

Prisoners retain rights under the Due Process Clause, but prison disciplinary proceedings are not part of a criminal prosecution and the full array of rights due a defendant in such proceedings does not apply. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citing *Morrissey v. Brewer*, 408 U.S. 471, 488 (1972)). In prison disciplinary proceedings where an inmate faces the possible loss of diminution credits, he is entitled to certain due process protections. These include: (1) advance written notice of the charges against him; (2) a written statement of the evidence relied on and the reasons for taking any disciplinary action; (3) a hearing where he is afforded the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision; (4) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues; and (5) an impartial decision-maker. *See Wolff*, 418 U.S. at 564–66, 592.

There is no constitutional right to confront and cross-examine witnesses or to retain and be appointed counsel at inmate disciplinary hearings. *See Baxter v. Palmigiano*, 425 U.S. 308, 322 (1976); *Brown v. Braxton*, 373 F.3d 501, 504–05 (4th Cir. 2004). As long as the hearing officer's decision contains a written statement of the evidence relied upon, due process is satisfied. *See Baxter*, 425 U.S. at 322, n.5. Moreover, substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985). Federal courts do not review the correctness of a disciplinary hearing officer's findings of fact. *See Kelly v. Cooper*, 502 F. Supp. 1371, 1376 (E.D. Va. 1980). The findings will only be disturbed when unsupported by any evidence, or when wholly arbitrary and capricious. *See Hill*, 472 U.S. at 456; *see also Baker v. Lyles*, 904

F.2d 925, 933 (4th Cir. 1990). As long as there is some evidence in the record to support a disciplinary committee's factual findings, a federal court will not review their accuracy.

In his Opposition, Graham states that he was denied due process at the UDC hearing because only one staff member was present and the BOP rule requires the committee to be made up of "two or more staff members with the authority to hold an initial hearing." ECF No. 8 at 1. He states that Case Manager M. Chissolm was the only member present during the UDC hearing. *Id*. Graham is correct in his observation that only one staff member's signature appears on the UDC report. *See* ECF No. 8-2 at 1. The UDC hearing, however, did not result in any sanctions being imposed on Graham; rather, the only result was a referral to the DHO for another hearing to determine his guilt or innocence, *id.*, thus the absence of another staff member does not violate the Constitution even though it did not comply with BOP rules. *See e.g., Riccio v. County of Fairfax*, 907 F.2d 1459, 1466 (4th Cir. 1990) ("A state does not necessarily violate the Constitution every time it violates one of its rules"). Where, as here, the rule in question does not result in a denial of that which is guaranteed by the Due Process clause, the violation of the rule does not amount to a Constitutional violation.

Graham further maintains that "201A" is not a valid rule citation and relies upon a list of rules promulgated by the BOP. ECF No. 8 at 1; ECF No. 8-2 at 4. Rule 201 is described as fighting with another person; however, Graham was charged with attempting to fight with another person and the notice he was provided makes that fact clear. ECF No. 4-2 ¶ 4. The designation of "201A" is an indication that Graham was charged with an attempt to violate Rule 201. *See* ECF 4-1 at 11. (Program Statement 5270.09, Inmate Discipline Program). There is no violation of the due process clause through the use of such a designation; to conclude otherwise is to honor form over substance. *See e.g., Castellanos v. Snyder*, 2000 WL 1434590 (6th Cir.

7

2000) (charge alleging violation of code "102A" was sufficient notice of alleged aiding in attempt to escape charge).

Graham's claim that his security level score was miscalculated, ECF No. 1 at 8–9; ECF No. 8 at 1, is conclusory and vague. He simply states that on September 9, 2014, his custody level score was 10, and two months later when the Northeast Region granted Graham's administrative appeal and ordered FCI Loretto camp to change his custody score for program participation and living skills from average to good, it should have been changed to a score of 8. ECF No. 8 at 1; ECF No. 8-2 at 8. Even assuming Graham's security level score was wrong, the claim does not implicate a constitutionally protected interest. The error, which Graham does not allege was intentional, has not deprived him of a protected liberty interest. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995) (liberty interest implicated where "atypical and significant hardship . . . in relation to the ordinary incidents of prison life" is established). Assignment to one prison versus another, access to programs, or particular housing assignments and other matters that pertain to classification and assignment of prisoners to particular prisons do not implicate due process. *See Moody v. Daggett*, 429 U.S. 78, 88 (1976). "[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution." *Meachum v. Fano*, 427 U.S. 215, 224 (1976).

Graham's claim that he was tricked into waiving his request for a staff representative is without any evidentiary support. He does not include evidence to support the conclusory claim, nor does he offer any objective proof that his waiver was anything other than voluntary. ECF No. 8 at 1. This allegation does not support a cognizable claim.

Finally, with regard to the evidence relied upon to find Graham guilty of committing the rule violation, all that is required is that the hearing officer relied upon "some evidence." *See Hill*, 472 U.S. at 455. In DHO Garcia's declaration under oath, he states that under Program Statement 5270.09, he is required to review video footage when evidence of a rule violation is captured on video and he did so in this instance. ECF No. 4-2 ¶ 7. Garcia further explains that inmates are not permitted to view video footage "because it would jeopardize the safe and orderly operation of the institution for inmates to know the locations of the security cameras and what each camera can and cannot see." *Id*. Graham's assertions that it was somehow improper for the SIA officer to neglect mentioning a memorandum written by Officer Hernandez does not vitiate the evidence relied upon to arrive at a guilty finding. *See* ECF No. 8 at 1–2. The only material fact at issue in the hearing before DHO Garcia was whether Graham was attempting to fight with another inmate. The circumstances of how the fact of his violation of the rule came to be known are of little to no consequence and do not constitute a violation of his due process rights.

## IV. CONCLUSION

Based on the undisputed facts before this Court, the Petition for Writ of Habeas Corpus must be dismissed. A separate Order follows.

2/22/2017
Date

GEORGE J. HAZEL
UNITED STATES DISTRICT JUDGE